UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:

JEROME DUNCAN, INC.,                         Case No. 05-59728
                                                    Chapter 7
                 Debtor.                           Hon. Marci B. McIvor
_____/

RICHARD J. DUNCAN, individually, and as
TRUSTEE UNDER AGREEMENT DATED
DECEMBER 27, 1985, AS AMENDED
AND/OR RESTATED and derivatively in the
Right of JEROME-DUNCAN, INC., a Michigan
corporation,

                     Plaintiff,                  Adv. Pro. No. 05-5707
v.
GAIL M. DUNCAN, an individual; SHASHI K.
TEJPAUL, an individual; CAR COFFEE, INC.,
a Michigan corporation; CAR TOWING, INC.,
a Michigan corporation; COMMUNICATIONS
AND RELATIONSHIP MARKETING, INC., a
Michigan corporation; EMPLOYEE PAYROLL
SERVICES, INC., a Michigan corporation; J-D
RENT-A-CAR, INC., a Michigan corporation;
JEROME-DUNCAN LEASING, INC., a
Michigan corporation; STERLING AGENCY,
INC., a Michigan corporation; and MINORITY
ENTERPRISES, LLC,

                   Defendants.
_____/

<u>OPINION DENYING GAIL DUNCAN'S MOTION TO DISQUALIFY
BANKRUPTCY JUDGE McIVOR</u>

For the reasons, set forth below, this Court DENIES Gail Duncan's Motion to

Disqualify Bankruptcy Judge McIvor.

I.

<u>FACTUAL AND PROCEDURAL BACKGROUND</u>

Gail Duncan was the president and majority shareholder of Jerome Duncan, Inc

("JDI"). Her husband, S. K. Tejpaul, was also a shareholder of JDI. In June 2005, Gail Duncan and S. K. Tejpaul placed the Debtor, an auto dealer located in southeastern Michigan, in a Chapter 11 bankruptcy. This action was subsequently converted to a Chapter 7 proceeding.

On September 15, 2005, Richard Duncan removed a state court action concerning disputes over stock ownership and breach of contract against Gail Duncan and Tejpaul to the Bankruptcy Court. On September 16, 2005, Richard Duncan filed a Motion for Removal of Directors, seeking to remove both Gail Duncan and Tejpaul as directors of JDI and seeking the appointment of a chief restructuring officer ("CRO"). On September 23, 2005, this Court held a hearing on that motion.

At the hearing on the Motion held on September 23, 2005, the Court heard from counsel for Richard Duncan, counsel for the United States Trustee, and counsel for the Official Unsecured Creditors Committee (the "Creditors Committee"), all of whom favored the appointment of a CRO, and from counsel for the Debtor (and Gail Duncan and S.K. Tejpaul as the principals of the Debtor), counsel for S. K. Tejpaul, in his individual capacity, counsel for Gail Duncan, in her individual capacity, and counsel for FMCC, all of whom opposed the appointment of a CRO. After hearing argument from the parties, the Court requested that counsel for Richard Duncan, the U.S. Trustee, the Creditors Committee, the Debtor, and FMCC adjourn to her chambers for a discussion. *See* 9/23/05 Transcript, at 128-29. Notably, neither counsel for Tejpaul nor counsel for Plaintiff voiced opposition to the in-chambers meeting prior to its occurrence.

Once the hearing resumed after the in-chambers meeting, counsel for Tejpaul objected on behalf of both Tejpaul and Gail Duncan, arguing in essence that the Court

erred by allowing counsel for Richard Duncan to attend, while excluding counsel for Tejpaul and Gail Duncan. *Id.* The Court noted those objections and made two decisions on the record: (1) the Court adjourned the hearing on Richard Duncan's motion to remove Gail Duncan and Tejpaul in order to conduct a full evidentiary hearing; and (2) the Court directed all the parties to agree on a CRO based on its concerns about the management of the Debtor and stated that, if the parties failed to agree on a CRO, the Court would appoint one. 9/23/05 Transcript, at 128-31. Both Tejpaul and Gail Duncan were allowed to participate in the process of selecting a CRO. *Id.*, at 131. On October 4, 2005, the Court entered an order appointing O'Keefe and Associates as CRO. 10/4/05 Order. The Court's order expressly noted that Gail Duncan had no preference as the selection of a CRO and had left that choice to the other parties. *Id.,* at 2. Gail Duncan did not appeal the entry of the order appointing a CRO.

On October 30, 2006, Gail Duncan filed this Motion to Disqualify Bankruptcy Judge McIvor. The Motion to Disqualify was filed one day prior to numerous motions to dismiss and a motion for remand filed in other adversary proceedings involving JDI (A.P 06-4570 and A.P. 06-4661).

Gail Duncan's Motion to Disqualify argues that the Court should be disqualified because (1) she filed a complaint with the Sixth Circuit related to the September 23, 2005 hearing, and (2) the Court held an in-chambers conference without her counsel or counsel for Tejpaul present.

For the reasons set forth below, this Court denies Gail Duncan's Motion to Disqualify Bankruptcy Judge McIvor.

II.

ARGUMENT

Gail Duncan contends that this Court should be disqualified under 28 U.S.C. § 455(a),[1] which provides: "Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." Under § 455(a), a court must assess "whether a reasonable person would infer, from all the circumstances, that the judge's impartiality is subject to question." *Baker v. City of Detroit*, 458 F.Supp. 374, 376 (E.D. Mich. 1978). In all cases, the movant bears the burden of establishing that disqualification is warranted under § 455. *In re Desilets*, 268 B.R. 516 (W.D. Mich. 2001). However, the ultimate decision on disqualification is within the Court's discretion. *Schilling v. Heavrin* (*In re Triple S Restaurants, Inc.*)*,* 422 F.3d 405, 417 (6th Cir. 2006).

Generally, recusal under § 455(a) is necessitated by extra-judicial, as opposed to judicial factors. *See, e.g., In re Desilets,* 268 B.R. 516, 520 (W.D. Mich. 2001). The United States Supreme Court has explained, ". . . judicial rulings alone almost never constitute a valid basis for a bias or partiality motion. … Almost invariably, they are proper grounds for appeal, not for recusal." *Liteky,* 510 U.S. at 555-56 (citations and quotations omitted). In the Sixth Circuit, this "extrajudicial source" factor has given rise to the frequent observation that disqualification under § 455 cannot be premised on purely judicial conduct. *See, e.g., United States v. Arhebamen,* 2006 WL 2793083 (6th Cir., Sept. 28, 2006) (unpublished) (*citing Green v. Nevers,* 111 F.3d 1295, 1303-04

---

[1]Gail Duncan also alleges, without argument, that Bankruptcy Judge McIvor should be disqualified pursuant to 28 U.S.C. § 144. This Court finds that 28 U.S.C. § 144 does not apply to the bankruptcy courts. *In re Celotex Corp.*, 137 B.R. 868, 874 (Bankr. M.D. Fla. 1992)("Title 28 U.S.C. § 144 does not apply to the bankruptcy court.")

(6th Cir. 1997)); *Martin v. LaBelle,* 7 Fed. Appx. 492, 2001 WL 345791 (6th Cir. 2001) (unpublished); *United States v. Story,* 716 F.2d 1088, 1091 (6th Cir. 1983).

In this case, Gail Duncan argues that the Court's impartiality "might reasonably be questioned" for two reasons: first, Gail Duncan has filed a complaint with the Sixth Circuit Court of Appeals regarding this Court, and, second, the Court held an in-chambers conference during a related adversary proceeding from which Gail Duncan's counsel was excluded.  As discussed below, this Court finds that neither rationale warrants disqualification.

A. <u>Gail Duncan's Motion is an Untimely Collateral Attack.</u>

As an initial matter, this Court denies Gail Duncan's Motion because it is an untimely collateral attack on an order properly entered by this Court.  As numerous courts – including the United States District Court for the Eastern District of Michigan – have held, an objection under § 455 must be timely. *See, e.g., Deuer Manufacturing, Inc. v. Kent Products, Inc.,* 760 F.Supp. 609, 611 (E.D. Mich. 1989) ("Sec. 455 requires that a party raise the issue of disqualification of the judge at the earliest moment after acquiring knowledge of the facts providing a basis for disqualification."). *See also, In re Big Rivers Electric Corp.,* 213 B.R. 962, 972 (W.D. Ky. 1997) (citing cases); *In re Jansen*, 107 B.R. 249, 254 (Bankr. D. Ariz. 1989). Moreover, "the appearance of impropriety may be raised on collateral attack only if asserted promptly upon learning the facts alleged to warrant recusal and *may not be raised collaterally if the opportunity to do so existed at a time when direct review was available.*" *Hardy v. United States,* 878 F.2d 94, 97-98 (2d Cir. 1989) (citing *Liljeberg v. Health Services Acquisition Corp.,*

486 U.S. 847 (1988)) (emphasis added). In other words, Gail Duncan's motion must be timely and procedurally proper. The facts here show that Gail Duncan's motion is neither.

In this case, the Court requested an in-chambers meeting on September 23, 2005 in open court and in the presence of counsel for both Tejpaul and Gail Duncan. *See* 9/23/05 Transcript, at 128-29. Yet neither Tejpaul nor Gail Duncan voiced opposition to being excluded from the in-chambers conference before it took place. *Id.* Instead, both waited until *after* the meeting had occurred and after any alleged error had arisen to voice opposition. Moreover, Gail Duncan has now waited for *over a year* to raise any sort of formal objection to the in-chambers conference. Indeed, she never appealed the orders entered by the Court after the in-chambers conference.

Gail Duncan's year-long delay in raising the issue of the 9/23/05 in-chambers conference makes her objection untimely. *See, Deuer,* 760 F. Supp. at 612 (holding that a delay of several months before filing a motion for recusal was "clearly contrary to the spirit of sec. 455" and "presumptively untimely"). *See also, Bradley v. Milliken,* 426 F. Supp. 929, 931 (E.D. Mich. 1977), *aff'd on other grounds,* 620 F.2d 1143 (6th Cir. 1980) (characterizing a motion under § 455 as untimely when it was filed fifteen months after the alleged conduct at issue). Furthermore, by raising the issue in a motion under § 455(a) rather than an appeal or motion for reconsideration, despite the fact that all of the relevant facts were known to her in time to raise a direct challenge, Gail Duncan has mounted an inappropriate collateral attack which is procedurally improper. *See, Hardy,* 878 U.S. at 97-98. Gail Duncan knew all she needed to know to raise a direct challenge in September 2005, yet she failed to do so. Accordingly, Gail Duncan's Motion is both

untimely and procedurally defective.

B. Gail Duncan's Complaint Does Not Require Disqualification Under § 455.

Apart from the untimeliness of Gail Duncan's Motion, both grounds asserted by Gail Duncan are legally deficient. First, Gail Duncan contends that the Court's disqualification is warranted solely because she has filed a complaint against the Court in the Sixth Circuit Court of Appeals. Gail Duncan cites no binding authority for this proposition and relies on *In re Olson,* 20 B.R. 206 (D. Neb. 1982), a decision from the United States District Court for the District of Nebraska.[2]

This Court rejects the holding of *Olson* because, under *Olson*, the filing of any complaint against a judge – no matter how baseless, or how divorced from reality – will automatically preclude that judge from adjudicating *any* matter involving the complainant. This finding creates an automatic vehicle for forum shopping: whenever a litigant is dissatisfied with the presiding judge, he or she need only file a complaint against the judge and that judge is necessarily disqualified. For this reason, "courts have typically rejected recusal motions based on, and effectively created by, a litigant's deliberate act of criticizing the judge or judicial system." *In re Lickman (Henkel v. Lickman*), 284 B.R. 299, 304-05 (M.D. Fl. 2002) (quoting *United States v. Owens,* 902 F.2d 1154, 1156 (4th Cir. 1990)). As stated by the Fourth Circuit Court of Appeals:

> Parties cannot be allowed to create the basis for recusal by their own deliberate actions. To hold otherwise would encourage inappropriate "judge shopping." It would invite litigants to test the waters with a particular judge and then to take steps to create

---

[2]The *Olson* decision has been criticized by several courts, including *In re WHET, Inc.*, 33 B.R. 424, 427 (D. Mass. 1983), which stated that "*Olson* is not the view of the First Circuit and may, in fact, be an aberration."

recusal grounds if the waters proved uncomfortably hot.

*Owens,* 902 F.2d at 1156 (quoted in *Lickman*, 284 B.R. at 304-05). That is precisely what Gail Duncan has done in this case.

Courts have found that 28 U.S.C. 455(a) " 'must not be so broadly construed that it becomes, in effect, presumptive, so that recusal is mandated upon the merest unsubstantiated suggestion of personal bias or prejudice.'" *United States v. Marshall*, 77 F. Supp. 2d 764, 767 (N.D. Tex. 1999) *citing United States v. Cooley*, 1 F.3d 985, 993 (10th Cir.1993) (*quoting Franks v. Nimmo*, 796 F.2d 1230, 1235 (10th Cir.1986)). For example, a judge is not disqualified merely because a litigant sues or threatens to sue him. *Marshall*, 77 F. Supp. 2d at 768 *citing Matter of Hipp, Inc.*, 5 F.3d 109, 116 (5th Cir.1993); *Olsen v. Wainwright*, 565 F.2d 906, 907 (5th Cir.1978); *United States v. Grismore*, 564 F.2d 929, 933 (10th Cir.1977), *cert. denied*, 435 U.S. 954 (1978); *Jones v. City of Buffalo*, 867 F. Supp. 1155, 1163 (W.D.N.Y.1994);*United States v. Blohm*, 579 F.Supp. 495, 505 (S.D.N.Y.1983) *In re Martin-Trigona*, 573 F.Supp. 1237, 1243 (D.Conn.1983), *appeal dism'd,* 770 F.2d 157 (2d Cir.1985), *cert. denied*, 475 U.S. 1058 (1986).

In this case, Gail Duncan waited until over a year had passed to file a motion that would put the propriety of the in-chambers conference to the test and this motion to disqualify was filed on the eve of a hearing on Ford and FMCC's motions to dismiss Gail Duncan's complaint. A reasonable person would conclude that the filing of the Complaint with the Sixth Circuit is merely an attempt to avoid an adverse decision on those pending motions rather than a reasonable fear that the Court is biased. For the above-stated reasons, this Court rejects Gail Duncan's assertion that her complaint, in and of itself,

requires this Court's disqualification under § 455.

C. The September 23, 2005 Conference Does Not Require Disqualification Under § 455.

1. Gail Duncan's Motion is Based on Judicial Rather than Extra-Judicial Conduct.

As previously noted, § 455 ordinarily requires disqualification only where a judge's *extra-judicial* conduct would lead a reasonable person to question a judge's impartiality. *See,* 28 U.S.C. § 455(a); *Story,* 716 F.2d at 1091. Accordingly, a motion under § 455 typically cannot be based on judicial conduct. For instance, in *Bradley v. Milliken*, 620 F.2d 1143 (6th Cir. 1980), the district court judge was given the task of formulating a decree to effect the desegregation of the Detroit public schools pursuant to an order from the United States Supreme Court. In the process of doing so, the judge held an ex parte conference with representatives of the Detroit Board of Education. Plaintiffs moved for the judge's disqualification, based on the ex parte contact, which the district court denied. On appeal to the Sixth Circuit, the plaintiffs argued that the district court erred in denying their motion for disqualification under § 455. *Id.* at 1156-57. The Sixth Circuit Court of Appeals summarized the grounds for denying the § 455 motion as follows:

> The plaintiffs complain that Judge DeMascio created the appearance of partiality *by meeting ex parte with the Detroit Board's representatives* on August 15, 1975, even before plaintiffs' counsel had received a copy of the court's just filed remedial guidelines, to discuss an impending teachers' strike. The plaintiffs also argue Judge DeMascio engaged in what they term 'negotiations' with the Board in developing a desegregation plan, *a process from which they were excluded.*

*Id.* at 1157 (emphasis added). The Court held, however, that neither the alleged ex parte

contact nor the alleged "negotiations" required the district judge's recusal under § 455 because both were "judicial activities." *Id.* Other courts have reached similar conclusions. In *In re Big Rivers Electric Corp.,* for example, the Bankruptcy Court for the Western District of Kentucky held that, where a court engaged in *ex parte* contact with a Court-appointed examiner pursuant to court orders, the court was acting in its judicial capacity. *See Big Rivers,* 23 B.R. at 976.

In *Bradley*, the plaintiffs' § 455 motions were based in part on the judge's ex parte conduct with one party. In *Bradley,* the judge justified his decisions to meet with representatives of the Detroit Board of Education by noting that they were designed to promote judicial efficiency. The instant case presents a slightly different scenario. In this case, the Court met with counsel for all the parties and the United States Trustee, but excluded the lawyers representing Gail Duncan and S.K. Tejpaul in their individual capacities. The Court did not invite counsel for Gail Duncan and S.K. Tejpaul to the September 23, 2005 meeting because their attendance was unnecessary since both were already represented by Debtor's counsel. Furthermore, just as the Sixth Circuit Court of Appeals concluded that the ex parte contact at issue in *Bradley* was judicial in nature and therefore did not require disqualification under § 455, so does the conduct at issue in this case fail to support Gail Duncan's motion to disqualify. In telling counsel for Gail Duncan and S.K. Tejpaul that neither needed to attend the conference in chambers, the Court exercised its legal judgment, concluding that their presence was neither conducive to progress nor legally required. Both were represented by counsel in their capacity as principals of the Debtor, and the appointment of a CRO was an issue involving the Debtor.

Consequently, as in *Bradley,* the conduct challenged by Gail Duncan's Motion is judicial conduct and is not a proper basis for a motion under § 455.

> 2. <u>Gail Duncan Was Not Prejudiced By the September 23, 2005 Hearing.</u>

Gail Duncan's Motion also fails the ultimate test of "whether a reasonable person would infer, from all the circumstances, that the judge's impartiality is subject to question." *Baker*, 458 F. Supp. at 376.

Gail Duncan was not prejudiced in any fashion by having her personal attorney excluded from the in-chambers conference. In fact, Gail Duncan *was* represented at the conference. In her complaint to the Sixth Circuit, Gail Duncan herself states that she has two attorneys in the Jerome Duncan bankruptcy: Shafer & Weiner and Hertzberg P.C. *See* Complaint, at 3. Shafer & Weiner, through Mr. Jason Bank, represents the Debtor, Jerome Duncan, Inc. Mr. Bank attended both the 9/23/05 hearing *and* the 9/23/05 in-chambers hearing. *See* 9/23/05 transcript, at 128-29. Therefore, Gail Duncan was represented at the conference in her capacity as President of the Debtor through the attendance of the Debtor's corporate counsel.

Although Gail Duncan's personal attorney, Mr. Eric Rosenthal of Barris, Scott, Denn & Driker, was not present at the in-chambers conference, the conference did not have anything to do with the motion brought against Gail Duncan in her personal capacity. Indeed, upon returning to the bench after the in-chambers conference, the Court expressly ruled that the motion to remove Gail Duncan and Tejpaul was adjourned for an evidentiary hearing at a later date. *See* 9/23/05 Transcript, at 130. The Court merely ordered the parties to agree on a CRO and explicitly told Gail Duncan that she

could be involved in the process of selecting an individual to serve in this capacity. *Id.,* at 131. The in-chambers conference dealt only with corporate issues, and Gail Duncan's corporate counsel was present to address those issues on Gail Duncan's behalf.

For these reasons, this Court finds that Gail Duncan was not prejudiced at all by the Court's decision to hold an in-chambers conference without Mr. Rosenthal. In the absence of prejudice to Gail Duncan, a reasonable person could not conclude that the 9/23/05 meeting undermines the appearance of impartiality. Accordingly, this Court denies Gail Duncan's Motion under § 455 on this ground.

### 3. Gail Duncan Cites Only a Presumptive Legal Error Rather Than Evidence of Bias or Prejudice.

Even assuming *arguendo* that the Court erred in excluding Gail Duncan's counsel from the in-chambers conference, the ultimate question under § 455 is whether that fact demonstrated *bias or prejudice* against Gail Duncan. Gail Duncan has simply failed to carry her burden of showing that the Court's decision was the product of bias or prejudice, as opposed to a presumably erroneous view of the law. An error – even an error that affects Gail Duncan in her personal capacity – is not necessarily the product of the type of bias or prejudice described in *Liteky*. *See Liteky,* 510 U.S. at 555-56. *See also Molinaro v. Watkins-Johnson CEI Division,* 359 F.Supp. 474, 477 (D.C. Md. 1973) ("[E]ven assuming that such a course of action was incorrect, the fact that a ruling of the court may constitute legal error does not provide a basis for disqualification.") (citations omitted). Indeed, Gail Duncan's Motion argues only that the Court lacked good cause to hold an *in camera* meeting. *See* Gail Duncan's Motion at 2-3. A lack of good cause is not tantamount to bias or prejudice. By alleging only a presumptive *legal* error, Gail Duncan

has failed to carry her burden under § 455. *In re Desilets*, 268 B.R. 516 (W.D. Mich. 2001). Accordingly, Gail Duncan's motion is denied on this ground as well.

III.

CONCLUSION

Gail Duncan's Motion is untimely, legally deficient, and unsupported by the record. For these reasons, as well as those noted above, this Court DENIES Gail Duncan's Motion to Disqualify Bankruptcy Judge McIvor.

**Signed on November 28, 2006**

                                                **/s/ Marci B. McIvor**
                                                **Marci B. McIvor**
                                                **United States Bankruptcy Judge**